UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE INSTALLATION AND USE OF A PEN REGISTER AND A TRAP AND TRACE DEVICE, ACQUISITON OF CELL-SITE INFORMATION AND ACQUISITION OF RECORDS | MISC. NO. 3:19mj59WIG<br><br>**Filed Under Seal** |

## APPLICATION

The United States of America, moving by and through Vanessa Richards, Assistant United States Attorney for the Connecticut, its undersigned counsel, respectfully submits under seal this *ex parte* application for an order pursuant to 18 U.S.C. §§ 3122-24 and 18 U.S.C. § 2703(d), authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") on a Metro PCS cellular telephone number 203-212-2621, subscribed to Jacob Nunez at 25 Camp Place, Bridgeport, CT ("the Target Telephone"), the acquisition of certain approximate location information for the Target Telephone, and other dialing, routing, and signaling information that may be associated with communications to or from the Target Telephone, as described in Attachment A to the proposed Order, in connection with a criminal investigation conducted by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") into Jacob Nunez and others regarding possible violations of Title 18, United States Code, Section 922(a)(1)(A) and Title 21, United States Code, Section 846. The government further requests the disclosure of records, including, but not limited to, subscriber information, unique telephone identifiers, toll records and historical cell site (tower/sector) information, as more fully

described in Attachment A, for the period of February 12, 2014, to the present. In support of this application, the United States asserts:

## LEGAL BACKGROUND

1. The Court may authorize the installation and use of pen-trap devices to collect prospective dialing, routing, signaling and addressing information associated with wire and electronic communications, not including the contents of any communication, pursuant to 18 U.S.C. §§ 3122-24. The Court may order a cell phone provider to disclose records or other information relating to the provider's subscribers pursuant to 18 U.S.C. §§ 2703(c)(1) and (d). Based on the combined authority of these statutes, the United States seeks prospective location information, other dialing, routing, signaling and addressing information concerning communications originating or terminating from the Target Telephone and the disclosure of records, including, but not limited to, subscriber information, unique telephone identifiers, toll records and historical cell site (tower/sector) information, as more fully described in Attachment A.

2. 18 U.S.C. § 3123(a)(1) gives the court the authority to authorize the installation and use of pen-trap devices anywhere within the United States, where the Court finds that an attorney for the Government has certified to the Court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation. Under 18 U.S.C. § 3122(b), an application for the authorization of a pen-trap device must include three elements: (1) "the identity of the attorney for the Government or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by the applicant that the information likely to be obtained

is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b).

3. The undersigned applicant is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure. The law enforcement agency conducting the investigation is the ATF.

4. In the next section of this application, the applicant will certify that the information likely to be obtained through this order is relevant to this ongoing criminal investigation.

5. Metro PCS is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or remote computing services, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under 18 U.S.C. §§ 3122-24 and 18 U.S.C. § 2703(d) to require Metro PCS to disclose the items described in Sections II and III of Attachment A to the proposed order.

6. A court order under 18 U.S.C. § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records or other information described in Sections II and III of Attachment A to the proposed order are relevant and material to an ongoing criminal investigation.

## ADDITIONAL INFORMATION

7.      A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

8.      In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic communications, as described below.

9.      A cellular telephone, or cell phone, is a mobile device that transmits and receives wire and electronic communications. Individuals using cell phones contract with service providers, who maintain antenna towers covering specific geographic areas. In order to transmit or receive calls and data, a cell phone must send a radio signal to an antenna tower that, in turn, is connected to a cellular service provider's network.

10.     Metro PCS is a company that provides cellular telephone access to the general public. Providers of cellular telephone service have technical capabilities that allow them to collect data that identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received radio signals from particular cell phones ("cell-site" location information). For each communication a cell phone makes, its cellular providers can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to

which the customer was connected at the end of the communication; and (5) the duration of the communication. Many cell towers divide their coverage up into multiple sectors (most often three 120° sectors). Where this is the case, the provider can usually identify the sector of the tower that transmitted the communication. However, cell towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to the cell phone does not necessarily serve every call made to or from that phone. Accordingly, this cell-site information allows law enforcement to determine only the general location of a cell phone.

11.     In addition to a unique telephone number, each cell phone has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cell phone could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cell phone to a cellular antenna or tower – are like the telephone numbers of an incoming call. They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content.

12.     A list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

13. These telephone numbers can include "post-cut-through dialed digits," which are numbers dialed from the cell phone after the initial call set up is completed. For example, some post-cut-through dialed digits may be the actual telephone number called, such as when a subject places a calling card, credit card, or collect call by first dialing a long-distance carrier access number and then, after the initial call is "cut through," dialing the telephone number of the destination party. That final number sequence is necessary to route the call to the intended party and, therefore, identifies the place or party to which the call is being made. In the event that the pen-trap devices capture some post-cut-through dialed digits that could be considered call content, such as account numbers or passwords, despite the government's use of reasonably available technology to avoid the recording or decoding of such content, the United States will make no affirmative investigative use of such information.

14. A cell phone can also be used to exchange text messages with email accounts. The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

15. Cellular phones can connect to the Internet via the cellular network. When connecting through the cellular network, Internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI. Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication. Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

## RELEVANT FACTS

16.     On or about July 26, 2013, an ATF Confidential Informant ("the CI"), whose information has proven to be accurate and reliable, advised that he/she could purchase firearms from a person later identified as Raul CABAN-MARTES, a resident of Norwalk, CT.

17.     Over the course of several months, the CI engaged in four controlled purchases from CABAN-MARTES in which the CI purchased a total of four firearms and one ballistic vest.  In the first controlled purchase of one firearm, CABAN-MARTES sold the CI a firearm. In the second controlled purchase of one firearm, a person identified as Stephen HEROLD brought the weapon to and participated in the sale.  For the next controlled purchase, CABAN-MARTES sold the CI and an ATF Task Force Officer acting an undercover capacity (the UC) two firearms and a ballistic vest.  It is believed that HEROLD supplied CABAN-MARTES with one of the two firearms that were sold by CABAN-MARTES.

18.

19.     On or about January 24, 2014, the CI had a recorded meeting with CABAN-MARTES, who identified Jacob NUNEZ as one of his firearms suppliers.  CABAN-MARTES agreed to act as a middle-man for the CI to purchase firearms from NUNEZ.

20.     On or about January 27, 2014, the CI made a controlled purchase of a .32 caliber Mauser pistol and one box of Remington .32 caliber ammunition, containing approximately 31 bullets, from NUNEZ in CABAN-MARTES's presence in Norwalk, Connecticut.

21.     The next day, the CI attempted a controlled purchase of a firearm from NUNEZ, but the transaction did not take place.  At that time NUNEZ and the CI exchanged telephone numbers.  NUNEZ provided the Target Telephone as his number.

22. On or about February 6, 2014, the CI later had a recorded meeting with NUNEZ. The CI advised that he/she had purchased firearms from HEROLD. NUNEZ responded that he (NUNEZ) was actually HEROLD'S firearms source.

23. Toll records for the Target Telephone indicate that, from August 27, 2013 through February 11, 2014, the Target Telephone has more than 300 contacts with the telephone used by HEROLD and more than 200 contacts with the telephone used by CABAN-MARTES.

24. On or about March 3, 2014, the CI made a controlled purchase of approximately 24 grams of marijuana (packaged weight) from NUNEZ in Norwalk, CT.

25. In late March and early April 2014, NUNEZ contacted the CI from the Target Telephone and advised him/her that NUNEZ would have more firearms to sell the CI in the near future.

26. The applicant hereby certifies that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation being conducted by the ATF as required by 18 U.S.C. § 3122(b)(2). Similarly, the facts set forth above show that there are reasonable grounds to believe that the records and information described in Sections II and III of Attachment A are relevant and material to an ongoing criminal investigation, as required by 18 U.S.C. § 2703(d). Specifically, this information will help the United States identify and locate the source of the narcotics and weapons sold by Nunez and determine the nature and scope of their activities.

## GOVERNMENT REQUESTS

27. For the reasons stated above, the United States requests that the Court enter an Order authorizing installation and use of pen-trap devices that will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or

from the Target Telephone described in Attachment A to the proposed orders, including the date, time, and duration of the communication, and the following, without geographic limit:

  a. IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

  b. Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone numbers described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

  c. IP addresses of any websites or other servers to which the cell phone device or devices connected;

  d. Source and destination telephone numbers and email addresses and

  e. "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).[1]

28. The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8), and does not seek GPS data pursuant to this Order.

29. The United States further requests that the Court authorize the foregoing installation and use for a period of sixty days, pursuant to 18 U.S.C. § 3123(c)(1).

30. The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order Metro PCS and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution

---

[1] In the event that the pen-trap device captures some post-cut-through dialed digits that could be considered call content, such as account numbers or passwords, despite the government's use of reasonably available technology to avoid the recording or decoding of such content, the United States will make no affirmative investigative use of such information.

of this Order to furnish, upon service of the Order, information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the ATF pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of this Order.

31. The United States further requests that the Court order that the ATF and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

32. The United States further requests that the Court order Metro PCS and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the ATF of any changes relating to the Target Telephone, including changes to subscriber information and to provide prior notice to the applicant and the ATF before terminating or changing service to the Target Telephone.

33. This Court has jurisdiction to issue the proposed Order because it is a "court of competent jurisdiction" under 18 U.S.C. §§ 2711 and 3122(a). Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." *See* 18 U.S.C. §§ 2703(d), 2711(3)(A)(i) and 3127(2)(A)(i).

34. The United States further requests that the Order require Metro PCS and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, including to the subscriber(s) of the Target Telephone, the existence of this application and

Order, the resulting pen-trap device, or this investigation, except as necessary to effectuate the Order, unless and until authorized by this Court. *See* 18 U.S.C. § 2705(b) and 18 U.S.C. § 3123(d)(2). Such an order is appropriate because the requested Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

35. The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. *See* 18 U.S.C. § 3123(d)(1). As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their disclosure may seriously jeopardize that investigation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 10, 2014.

Respectfully submitted,

*Vanessa Richards*
Vanessa Richards
Assistant U.S. Attorney
Federal Bar No. phv05095
Office of the United States Attorney
1000 Lafayette Blvd., 10th Floor
Bridgeport, CT 06604
(203) 696-3000